## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| PATRICIA A. MAGRUDER, on Behalf of Herself and All Others Similarly Situated, | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:05-CV-1156-M |
| | § | |
| HALLIBURTON COMPANY, and DAVID J. LESAR, | § § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are the Motions to Dismiss filed by Defendants Lesar and Halliburton

[Docket Entries #18 and #20].  Having considered the extensive briefing, oral argument, and

applicable law, the Court hereby GRANTS the Motions, insofar as they request dismissal of the

Complaint for failure to satisfy the stringent requirements for pleading an action based on

securities fraud, but grants Plaintiffs leave to file an amended Complaint to comply with these

requirements.

### PRELIMINARY ISSUES REGARDING CLASS DEFINITION

Because the parties dispute several preliminary matters, including the class period, the

Court will address those arguments first, and then reach the issues relevant to the Motions to

Dismiss.

#### A.  Class Period

The parties dispute the end date of the class period.  Defendants claim that the class

period should end on May 28, 2002.  Plaintiffs seek a class period ending July 22, 2002.  The original suit, Case No. 3:02-CV-1152-M, filed by Richard Moore on June 3, 2002, alleged a class period of July 22, 1999, until May 28, 2002.  A Complaint filed by John Kimble on August 29, 2003, was consolidated into the Moore suit.  Kimble's Complaint alleged a class period of September 29, 1998, to July 24, 2002.

Class counsel in the consolidated case then trimmed the class period to end on December 7, 2001.  On March 24, 2005, Magruder sought to intervene, referencing the later class periods in the Moore and Kimble Complaints.  On May 3, 2005, the Court allowed "Patricia Magruder or any party purporting to be injured by actions of all or some of the Defendants *after December 7, 2001*," to file a Complaint by May 9, 2005.  In the event such a Complaint was filed, the Court set a deadline for the parties to propose "what type of notice should be given to the putative class included within the *post December 7, 2001* period."

On May 9, 2005, Plaintiff Magruder filed a Class Action Complaint with a class period from December 8, 2001, until July 22, 2002.  The same day, the consolidated plaintiffs filed a Third Amended Complaint, alleging a class period from September 29, 1998, until December 7, 2001.  On June 3, 2005, the Court severed the Magruder Complaint from the consolidated action and allowed Magruder to proceed separately.[1]

Magruder's First Amended Complaint, filed on April 30, 2007, alleged the same class period she earlier sought—December 8, 2001, until July 22, 2002.  Defendants argue that the class period should end on May 28, 2002, because the Moore Complaint and the Third Amended Complaint in the consolidated action alleged class periods ending on or before May 28, 2002.

---

[1] This Court denied class certification of the claims of the consolidated plaintiffs on November 4, 2008.  However, the Court is not now deciding the issue of class certification in this case.

Plaintiffs argue that their Complaint relates back to the Kimble Complaint, which alleged a class period lasting until July 24, 2002.  The Court agrees.  As a result, the applicable class period is December 8, 2001, until July 22, 2002.

### B.  Other Issues Regarding Class Definition

Defendants argue that any statements or events occurring prior to June 3, 1999, are time barred by the three year statute of repose.  The Court determined in its March 14, 2006, Order in the consolidated action that "all claims asserted by Plaintiffs for actions of any Defendant predating June 3, 1999, are dismissed as barred by limitations."  Both parties acknowledge that only statements or events within the class period are *actionable*.  However, Defendants further argue that statements and events occurring outside the class period should be stricken from the Complaint.  Because this issue is ultimately a matter of evidence, and the Plaintiffs argue that the alleged facts may be relevant to establish whether class period statements were false or misleading, the Court will not strike from the Complaint statements or events outside the class period which may provide relevant context and background.  Their presence, however, will not somehow revive claims the Court has already determined are barred by limitations.

### DEFENDANTS' MOTIONS TO DISMISS

### A.  Background

Plaintiffs filed this class action for alleged violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78 et seq.  Defendant Halliburton ("Halliburton") seeks dismissal of Plaintiffs' Amended Class Action Complaint (the "Complaint") under Federal Rules of Civil Procedure 9(b) and 12(b)(6).[2]  Halliburton argues that Plaintiffs have "failed to plead fraud, scienter, or loss

---

[2] FED. R. CIV. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances

causation with sufficient particularity." Halliburton further argues that "the statements challenged by Plaintiff are protected by the PSLRA's safe harbor." Defendant Lesar filed a separate Motion to Dismiss, alleging substantially similar grounds for dismissal.

## B. Legal Standard

In the Complaint, Plaintiffs allege violations of §10(b) of the Securities Exchange Act of 1934, and of Securities and Exchange Commission Rule 10b-5, which implements §10(b). Section 10(b) prohibits, "in connection with the purchase or sale of any security..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."[3] Accordingly, Rule 10b-5 makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.[4]

The basic elements of a securities fraud claim are:

(1) *a material misrepresentation or omission*;
(2) *scienter, i.e.,* a wrongful state of mind;
(3) *a connection with the purchase or sale of a security;*
(4) *reliance,* often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation;"
(5) *economic loss,* 15 U.S.C. § 78u-4(b)(4); and
(6) *"loss causation," i.e.,* a causal connection between the material misrepresentation and the loss.[5]

---

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED R. CIV. P. 12(b)(6) states: "a party may assert the following defenses by motion… (6) failure to state a claim upon which relief can be granted..."
[3] 15 U.S.C. § 78j(b).
[4] 17 CFR § 240 Rule 10b-5.
[5] *Dura Pharm., Inc. et al., v. Broudo et al.*, 544 U.S. 336, 341 (2005) (citations omitted) (emphasis in original); *see also Ind. Elec. Workers' Pension Trust Fund IBEW, et al., v. Shaw Grouping, et al.*, 537 F.3d 527, 532 (5th Cir.

Normally a complaint must satisfy Rule 8 of the Federal Rules of Civil Procedure, which merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[6]  However, allegations of fraud, such as those brought under §10(b), must be pled with particularity, pursuant to both the Private Securities Litigation Reform Act (PSLRA) and Rule 9(b) of the Federal Rules of Civil Procedure.[7]

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[8]  In addition, the PSLRA enhances the requirements of Rule 9(b) in two ways:

> First, plaintiffs must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading …." 15 U.S.C. § 78u-4(b)(1)(B). Second, for "each act or omission alleged" to be false or misleading, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).[9]

The Fifth Circuit summarized the requirements of both the PSLRA and Rule 9(b) in *Goldstein v. MCI Worldcom:*

> [A] plaintiff pleading a false or misleading statement or omission as the basis for a section 10(b) and Rule 10b-5 securities fraud claim must, to avoid dismissal pursuant to Rule 9(b) and 15 U.S.C. §§ 78u-4(b)(1) & 78u-4(b)(3)(A):
> (1) specify the [sic] each statement alleged to have been misleading, i.e., contended to be fraudulent;
> (2) identify the speaker;
> (3) state when and where the statement was made;
> (4) plead with particularity the contents of the false representations;
> (5) plead with particularity what the person making the misrepresentation

---

2008).
[6] FED. R. CIV. P. 8(a)(2).
[7] *Tellabs, Inc., et al., v. Makor Issues & Rights, LTD, et al.*, 127 S. Ct. 2499, 2507 (2007) ("Prior to the enactment of the PSLRA, the sufficiency of a complaint for securities fraud was governed not by Rule 8, but by the heightened pleading standard set forth in Rule 9(b).").
[8] FED. R. CIV. P. 9(b).
[9] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533.

obtained thereby; and

(6) explain the reason or reasons why the statement is misleading, i.e., why the statement is fraudulent.[10]

"This is the 'who, what, when, where, and how' required under Rule 9(b) in our securities fraud jurisprudence and under the PSLRA."[11]

Additionally, for allegations made on information and belief, the plaintiff must allege with particularity "all facts on which that belief is formed, *i.e.,* set forth a factual basis for such belief."[12] However, the plaintiff is not required to plead with particularity *every single fact* upon which its beliefs concerning false or misleading statements are based, but is required only to plead with particularity *sufficient facts* to support those beliefs.[13]

Plaintiffs may attempt to satisfy these pleading requirements by relying on statements made by a third party (typically an analyst), rather than on statements actually made by a defendant, and by arguing that such statements should be attributed to a defendant.[14] "Generally, securities issuers are not liable for statements or forecasts disseminated by securities analysts or third parties unless they have 'sufficiently entangled [themselves] with the analysts' forecasts [so as] to render those predictions 'attributable to [the issuers].'"[15] Entanglement may exist if plaintiffs can demonstrate that (1) the defendants adopted the statements, or (2) the defendants used the analysts as a conduit, making the statements with the intent that the analysts would

---

[10] *Goldstein v. MCI Worldcom,* 340 F.3d 238, 245 (5th Cir. 2003) (citing *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 350 (5th Cir.2002)).

[11] *Id.*

[12] *ABC Arbitrage Plaintiffs Group,* 291 F.3d at 350.

[13] *Id.* at 352.

[14] *Barrie et al., v. Intervoice-Brite, Inc., et al.*, 397 F.3d 249, 262 (5th Cir. 2005); *Southland Sec. Corp. et al., v. Inspire Ins. Solutions Inc., et al.*, 365 F.3d 353, 373-74 (5th Cir. 2004).

[15] *Southland Sec. Corp.*, 365 F.3d at 373.

communicate them to the market.[16]  Mere repetition by analysts of statements made by

defendants will not suffice.[17]  Entanglement and/or manipulation must be specifically pled.

The Fifth Circuit explained the special pleading requirements for attributing statements

made by third parties to defendants in *Southland Securities Corp.*:

> The plaintiff must plead with particularity…*who supplied the information to the
> analyst, how the analyst received the information, and how the defendant was
> entangled with or manipulated the information and the analyst*. Since the
> allegation of entanglement is central to the overall allegation of securities fraud, it
> must be pleaded with the required degree of specificity. The pleading should (1)
> *identify the specific forecasts and name the insider who adopted them*; (2) point to
> *specific interactions between the insider and the analyst which allegedly gave rise
> to the entanglement*; and (3) state the *dates on which the acts which allegedly
> gave rise to the entanglement occurred*.[18]

Absent specific allegations of these facts in the complaint, plaintiffs will not be permitted to rely

on statements made by third parties in a securities fraud action.

Liability for *fraudulent omissions* under Rule 10b-5 requires additional analysis.  This

Court, in the case of *In re Odyssey Healthcare, Inc. Securities Litigation*, observed that the usual

requirements of the PSLRA and Rule 9(b) do not easily "fit" omissions as they do

misrepresentations.[19]  The court held that where fraudulent omissions are alleged, "Rule 9(b)

typically requires the claimant to plead the type of facts omitted, the place in which the

omissions should have appeared, and the way in which the omitted facts made the

representations misleading."[20]  The court further required the plaintiffs to "specify the statement

that is misleading due to the omission in the same manner as a misrepresentation, i.e., the who,

---

[16] *Id.*

[17] *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 887 (N.D. Tex. 2005) (Godbey, J.).

[18] *Southland Sec. Corp.*, 365 F.3d at 373-74 (citations omitted) (emphasis added) ("However, analysts' statements
that reflect their own opinions or forecasts may not be charged to the defendants because the plaintiffs have not
sufficiently alleged entanglement and the adoption of such statements by the defendants.").

[19] *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d at 892.

[20] *Id.* (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004)).

what, when, and where."[21]  Finally, the court held that "if the misleading nature of the statement

is not apparent from the content of the statement and the substance of the omissions, the factual

allegations of the complaint must set forth [with particularity] an explanation of why the

omission rendered the statement misleading."[22]

These additional requirements arise because, generally, a corporation is not liable under

§10(b) merely because it failed to disclose all material information it possessed.[23]  In fact,

liability for nondisclosure can only arise if the plaintiff alleges facts that give rise to a duty to

speak.[24]  This court in *Kunzweiler v. Zero.net, Inc.* explained:

> Where a complaint alleges a material omission, "the materiality of the information
> claimed not to have been disclosed… is not enough to make out a sustainable
> claim of securities fraud. Even if the information is material, there is no
> liability under Rule 10b-5 unless there was a duty to disclose it." (citations
> omitted)…[A]n affirmative duty to disclose does arise when (1) a corporate
> insider trades on confidential information; (2) a corporation has made inaccurate,
> incomplete or misleading prior disclosures; or (3) a statute or regulation requires
> disclosure (citations omitted).[25]

The Fifth Circuit explained that allegations of incomplete disclosures are sustainable only

if what was said is actually misleading. "[I]n other words it must affirmatively create an

impression of a state of affairs that differs in a material way from the one that actually exists."[26]

As a result, to survive a motion to dismiss where the plaintiff alleges fraudulent omissions or

incomplete disclosures, the plaintiff must plead with particularity the facts that give rise to a duty

---

[21] *Id.* at 893.

[22] *Id.* at 894 ("The Complaint should specify the inference or implication that allegedly arises from the statement and explain *why* that inference or implication arises from the statement. Finally, the Complaint should specify the omitted information that is contrary to the implication or inference arising from the allegedly misleading statements, and establish that the omitted information was known to the speaker.").

[23] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 541.

[24] *Id.* (citing *Kaplan v. Utilicorp United, Inc.,* 9 F.3d 405, 407 (5th Cir.1993)).

[25] *Kunzweiler v. Zero.net, Inc.*, No. 3:00-cv-2553-P, 2002 U.S. Dist. LEXIS 12080 at *31-32 (N.D. Tex. July 3, 2002) (Solis, J.).

[26] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 541.

to disclose the material information, or the failure to do so will not be actionable.

The law mandates dismissal of any securities fraud claim that fails to satisfy either the PSLRA's pleading requirements or those of Rule 9(b).[27]  In evaluating a motion to dismiss for failure to state a claim, this Court looks to each allegedly fraudulent statement and/or omission independently to determine whether all elements are alleged with the required particularity, and "cannot aggregate insufficient allegations/pleadings in order to arrive at a conclusion of sufficiency when [the complaint is] viewed as a whole."[28]  Each allegation of fraud must individually meet the particularity requirements of the PSLRA.[29]  This court has the authority to dismiss claims even on grounds that the defendants did not themselves raise.  "Even if a party does not make a formal motion, the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair."[30]

### 1.   *Material Misrepresentation, Incomplete Disclosure, or Omission*

Rule 10b-5 requires a misrepresentation or omission to be material in order to be actionable.  The United States Supreme Court addressed the issue of materiality in *Basic Inc. v. Levinson*, and explained that the materiality requirement applied not only to the misrepresentation or omission, but also to the underlying omitted fact.  "[I]n order to prevail on a Rule 10b-5 claim, a plaintiff must show that the statements were misleading as to a material fact. It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise

---

[27] *In re Dell Inc., Sec. Litig.,* 591 F. Supp. 2d 877, 892 (W.D. Tex. 2008).

[28] *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 845 n.5 (N.D. Tex. 2005).

[29] *Barrie*, 397 F.3d at 260.

[30] *Coates et al., v. Heartland Wireless Commc'ns, Inc. et al.*, 55 F. Supp. 2d 628, 632 (N.D. Tex. 1999) (Fitzwater, J.) ("The court concludes that because defendants move to dismiss on the ground that plaintiffs have failed adequately to plead scienter, the court may analyze plaintiffs' complaint on its own initiative and dismiss for reasons defendants did not give.").

insignificant."[31]  The Court explained that an omitted fact is material if there is a "substantial

likelihood" that "disclosure of the omitted fact would have been viewed by the reasonable

investor as having significantly altered the 'total mix' of information made available."[32]  In other

words, a misstatement or omission is material "if there is a substantial likelihood that a

reasonable investor would consider the information important in making a decision to invest."[33]

Importantly, "vague and optimistic" statements that are mere puffery are not actionable

because they are immaterial as a matter of law.[34]  Generalized, positive statements about a

company, i.e., the company's competitive strengths, experienced management, and future

prospects, are immaterial.[35]  This is because the market relies on *specific facts* in determining the

price of a security, rather than vague and optimistic statements. No duty exists for a company to

portray itself in a cautious or "pejorative" light, so long as its statements are "reasonably

consistent with reasonably available data."[36]

Along the same reasoning, "[a] statement of belief is only open to objection where the

evidence shows that the speaker did not in fact hold that belief and the statement made asserted

something false or misleading about the subject matter."[37]  And a "predictive statement," where

the speaker makes statements regarding the future, may be actionable in three circumstances: (1)

---

[31] *Basic Inc., et al., v. Levinson*, 485 U.S. 224, 238 (1988).

[32] *Id.* at 231; *Rosenzweig et al., v. Azurix Corp., et al.*, 332 F.3d 854, 865-66 (5th Cir. 2003).

[33] *ABC Arbitrage Plaintiffs Group*, 291 F.3d at 359; *see also Southland Sec. Corp.*, 365 F.3d at 362 ("A fact is material if there is 'a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'  Materiality 'depends on the significance the reasonable investor would place on the withheld or misrepresented information.'"(citations omitted)).

[34] *Southland Sec.*, 365 F.3d at 372; *Nathenson et al., v. Zonagen Inc. et al.*, 267 F.3d 400, 422 (5th Cir. 2001) ("We conclude that there is no 'substantial likelihood' that a reasonable investor would consider these statements about a believed discovery whose value was wholly speculative to have 'significantly altered the 'total mix' of information' about Zonagen, and that these statements respecting Immumax were hence immaterial as a matter of law." (citation omitted)).

[35] *Rosenzweig*, 332 F.3d at 869.

[36] *Id.* (citing *Abrams et al., v. Baker Hughes Inc., et al.*, 292 F.3d 424, 433 (5th Cir. 2002)).

[37] *Greenberg et al., v. Crossroads Systems, Inc. et al.*, 364 F.3d 657, 670 (5th Cir. 2004).

the speaker does not genuinely believe the statement is accurate; or (2) there is no reasonable

basis for that belief; or (3) the speaker is aware of undisclosed facts that would tend to seriously

undermine the accuracy of the statement.[38]  However, merely alleging that certain predictive

statements did not have a reasonable basis-"that is, that were negligently made-would hardly

suffice to state a claim under Rule 10b-5."[39]

Also, if the alleged misrepresentations or omissions rest on contingent or speculative

information or events, "materiality 'will depend at any given time upon a balancing of both the

indicated probability that the event will occur and the anticipated magnitude of the event in light

of the totality of the company activity.'"[40]

Finally, this Court does not judge the materiality of misrepresented or omitted facts in the

abstract, but in light of all surrounding circumstances.[41]

### 2.  *Scienter*

The United States Supreme Court addressed the scienter requirement in *Tellabs, Inc. v.

Makor Issues & Rights, Ltd*.[42]  "To establish liability under § 10(b) and Rule 10b-5, a private

plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to

deceive, manipulate, or defraud.'"[43]  Additionally, the PSLRA requires a plaintiff to "state with

particularity facts giving rise to a strong inference that the defendant acted with the required state

of mind," i.e., to allege the intent to deceive, manipulate, or defraud, or severe recklessness, with

---

[38] *Rosenzweig*, 332 F.3d at 868 (5th Cir. 2003) (citing *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994)).
[39] *Id.* at 870 (citing *Rubenstein*, 20 F.3d at 169).
[40] *Basic Inc.,* 485 U.S. at 238.
[41] *Rosenzweig*, 332 F.3d at 866.
[42]  551 U.S. 308 (2007).
[43] *Tellabs, Inc.,* 127 S. Ct. at *2507.

particularity.[44]

In *Tellabs*, the Supreme Court provided a three step process for analyzing scienter in the context of a Rule 12(b)(6) motion to dismiss:

> *First,* faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, *accept all factual allegations in the complaint as true* (citation omitted). *Second,* courts must *consider the complaint in its entirety,* as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice (citation omitted). The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. *Third,* in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must *take into account plausible opposing inferences.*[45]

The Supreme Court emphasized the call for facts supporting a "strong" inference of scienter, rather than allowing plaintiffs to provide a mere factual basis for their allegations.[46]  The Court defined "strong" as "a powerful or cogent inference" or "persuasive, effective, and cogent."[47]

The Court further explained:

> To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the "smoking-gun" genre, or even the "most plausible of competing inferences," (citation omitted).  Yet the inference of scienter must be more than merely "reasonable" or "permissible"-it must be cogent and compelling, thus strong in light of other explanations.[48]

The Court held that a complaint will survive only if "a reasonable person would deem the

---

[44] 15 U.S.C. §78u-4(b)(2).

[45] *Tellabs, Inc.*, 127 S. Ct. at *2509 (emphasis added); *see also Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533.

[46] *Tellabs, Inc.*, 127 S. Ct. at *2510.

[47] *Id.*

[48] *Id.*

inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[49]

For securities fraud, the required state of mind that must be pled is either an "intent to deceive, manipulate, or defraud," or "severe recklessness."[50] "[A] securities fraud plaintiff must prove that the defendant either consciously misbehaved…or was so severely reckless that it demonstrates that the defendant must have been aware of the danger of misleading the investing public."[51] The Fifth Circuit defines "severe recklessness" as:

> [L]imited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.[52]

Importantly, in the Fifth Circuit plaintiffs must adequately allege scienter with respect to individual defendants, rather than relying on "group pleading," i.e., alleging that "defendants" or "management" acted with the required intent or severe recklessness.[53] The group pleading doctrine allows plaintiffs to rely on a presumption that statements in "prospectuses, registration statements, annual reports, press releases, or other group-published information," are the collective work of those individuals with direct involvement in the everyday business of the company.[54] The Fifth Circuit rejected this doctrine because it directly contravened the scienter requirement of the PSLRA, where particular facts giving rise to a strong inference that a

---

[49] *Id.*
[50] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533 (citing *Rosenzweig,* 332 F.3d at 866).
[51] *Plotkin et al., v. IP AXESS INC., et al.*, 407 F.3d 690, 697 (5th Cir. 2005).
[52] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533 (citing *Rosenzweig,* 332 F.3d at 866).
[53] *See Southland Sec. Corp.*, 365 F.3d at 365.
[54] *Id.* (citations omitted).

particular defendant acted with the required state of mind must be alleged.[55]  "Instead of being required to plead that a defendant actually made, authored or approved an offending statement in a corporate communication, the 'group pleading' doctrine in its broadest form allows unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles…[it] would allow the plaintiff to plead the first element of a section 10(b) case against an individual defendant without citing particular facts connecting the defendant to the alleged fraud."[56]  The Fifth Circuit recently explained:

> [T]his court has rejected the group pleading approach to scienter and instead looks to the state of mind of the individual corporate official or officials "who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment." *Consequently, "it is only necessary for us to address the allegations claimed to adequately show [scienter] on the part of the [named officers]" to determine whether the complaint sufficiently pleads scienter.*[57]

While a corporate defendant, like Halliburton in this case, may be *liable* for the false statements of its officers, the false statements must still be alleged with particularity to satisfy the PSLRA, and must therefore identify the individual corporate officer to whom the statement or omission is attributable.[58]  "Corporate statements can be tied to officers if plaintiffs allege they signed the documents on which the statements were made or allege adequately their involvement in creating the documents."[59]  The complaint must specifically tie individual defendants to the

---

[55] *Id.*
[56] *Id.*
[57] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533 (emphasis added) (citing *Southland Sec. Corp.*, 365 F.3d at 367-68).
[58] *Barrie*, 397 F.3d at 262.
[59] *Fin. Acquisition Partners LP, et al., v. Blackwell et al.*, 440 F.3d 278, 287 (5th Cir. 2006).

statements or omissions, or it will fail under the PSLRA's heightened-pleading standard.[60]  As

the Fifth Circuit explained, "[c]onsistent with our rejection of the 'group pleading' doctrine, we

do not construe allegations contained in the Complaint against the 'defendants' as a group as

properly imputable to any particular individual defendant *unless the connection between the*

*individual defendant and the allegedly fraudulent statement is specifically pleaded.*"[61]

      Consequently, a defendant *corporation* is deemed to have the required scienter for fraud

only if the *individual corporate officer* making the statement has the required level of scienter,

i.e., knows that the statement is false, or is at least severely reckless as to its falsity, at the time

the statement or omission was made.

      Conclusory allegations of scienter will not survive.[62]  The Fifth Circuit has explained that

"general allegations and conclusory statements, such as stating [defendants] knew ... adverse

material" cannot support a strong inference of scienter.[63]  However, direct evidence of intent or

severe recklessness is not required, and Plaintiffs may rely on circumstantial evidence to

demonstrate scienter.[64]

      Finally, scienter must exist at the time the misrepresentation or omission allegedly

occurred.[65]  The rule in the Fifth Circuit is that "a 'Plaintiff cannot charge Defendants with

intentionally misleading their investors about facts Defendants may have become aware of after

---

[60] *Id.*

[61] *Southland Sec. Corp.*, 365 F.3d at 365 (emphasis added).

[62] *Plotkin*, 407 F.3d at 696 (citing *Southland Sec. Corp.,* 365 F.3d at 361).

[63] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 538-39; *but see Plotkin*, 407 F.3d at 700 (where the Fifth Circuit allowed a general inference of scienter, stating: "Given the reasonableness of the inference that Plotkin possessed material facts casting doubt on its contracting partners' credibility, the district court was incorrect to fault Plotkin for failing to allege specific facts conclusively proving that IPaxess knew this information. *Cf. Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir.2000) (stating that an egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of recklessness).").

[64] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 535.

[65] *Kunzweiler*, 2002 U.S. Dist. LEXIS 12080 at *22.

making allegedly misleading statements to the public.'"[66]

*a.  Motive and Opportunity*

Allegations of motive and opportunity standing alone will not suffice to establish a strong

inference of scienter.[67]  But appropriate motive and opportunity allegations may "meaningfully

enhance the strength of the inference of scienter."[68]  Importantly, generalized financial motives

will not support an inference of scienter.  In *Abrams* v. *Baker Hughes Inc.* the Fifth Circuit

explained:

> [T]he motives alleged in the complaint are not the types of motive that support a
> strong inference of scienter. The plaintiffs allege that the defendants were
> motivated to commit fraud by *the need to raise capital, the desire for enhanced
> incentive compensation and the desire to sell stock at inflated prices*. This court
> has held that similar allegations were insufficient to support an inference of
> scienter...Absent an allegation that the defendants profited from the inflated stock
> value or the offerings, such allegations fail.[69]

Suspicious sales of stock may support an inference of scienter, but only insider trading in

suspicious amounts or at suspicious times during the class period is probative of scienter.

Plaintiffs must allege that stock sales were out of line with prior trading practices, or were made

at times calculated to maximize personal profit.  "[E]ven unusual sales by one insider do not give

rise to a strong inference of scienter when other defendants do not sell some or all of their shares

during the Class Period."[70]  The fact that other defendants did not sell their shares during the

relevant class period will also undermine plaintiffs' allegations of scienter.[71]

---

[66] *Plotkin*, 407 F.3d at 698 (citing *Lain v. Evans,* 123 F. Supp. 2d 344, 350 (N.D. Tex. 2000)).
[67] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533 (citing *Rosenzweig,* 332 F.3d at 867).
[68] *Id.* (citing *Southland Sec. Corp.,* 365 F.3d at 368).
[69] *Abrams*, 292 F.3d at 434.
[70] *Id.* at 435.
[71] *Nathenson*, 267 F.3d at 421.

### b.  *Failure to follow Generally Accepted Accounting Principles (GAAP)*

Generally, the mere publication of inaccurate accounting figures, or the mere failure to follow GAAP, does not alone establish scienter.[72]  "To plead scienter adequately, plaintiffs must state with particularity facts giving rise to a strong inference that the party knew that it was publishing materially false information, or that the party was severely reckless in publishing such information."[73]  "Plaintiffs cannot transform inherently nuanced conclusions into fraudulent misstatements or omissions simply by saying that there were abuses or misuses of the GAAP rules."[74]  Simply put, accounting violations can easily arise from negligence, oversight, or mismanagement, none of which rise to the standard required to support a securities fraud action.[75]

However, even though GAAP violations alone are insufficient to establish scienter, "when the number, size, timing, nature, frequency, and context of the misapplication [of accounting principles] or restatement are taken into account, the balance of the inferences to be drawn from such allegations may shift significantly in favor of scienter."[76]

### c.  *Position with Company, or "Positional Scienter"*

"A pleading of scienter may not rest on the inference that defendants must have been

---

[72] *In re Dell Inc., Securities Litigation,* 591 F. Supp. 2d at 893 (citing *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 534 and *Abrams,* 292 F.3d at 432).

[73] *Id.* (citing *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 534).

[74] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 536 (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990), where the court observed, "[a]t one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud. 'Must be' is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition.").

[75] *In re Dell Inc., Sec. Litig.* 591 F. Supp. 2d at 894 (citing *Abrams,* 292 F.3d at 433).

[76] *Id.* (citing *In re Triton Energy Ltd. Sec. Lit.,* No. 5:98-CIV-256, 2001 WL 872019 at *11 (E.D. Tex. Mar. 30, 2001)).

aware of the misstatement based on their positions within the company."[77]  Corporate officers

may not be held responsible for unattributed corporate statements solely on the basis of their

titles, even if their general level of day-to-day involvement in the corporation's affairs is pled.[78]

"Without specific allegations the Individual Defendants themselves actually knew about a

specific accounting violation or internal control problem, the pleadings are simply too vague to

support a strong inference of scienter."[79]

Corporate documents that have no stated author or statements within documents not

attributed to any individual may be charged to one or more corporate officers, but only if specific

factual allegations link the individual corporate officer to the statement at issue.[80]  But

unsupported general allegations about the existence of corporate reports that reveal or contain

information contrary to statements made are insufficient to survive a motion to dismiss.[81]  "Such

allegations must have corroborating details regarding the contents of allegedly contrary reports,

[and] their authors and recipients."[82]  If the complaint fails to allege facts demonstrating that

specific reports with specific information were available to specific individual defendants prior

to the date the allegedly fraudulent statements were made, then the allegations of fraud must fail,

unless other evidence of scienter is sufficiently pled.

   d.  *Magnitude or Duration of Violations*

Bare conclusory allegations that defendants *must have known* about fraudulent activity

---

[77] *Abrams*, 292 F.3d at 432.

[78] *Barrie*, 397 F.3d at 261.

[79] *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 894.  In *Dell*, the district court dismissed the complaint for insufficiently pled scienter because "the Plaintiffs state generally that the Individual Defendants oversaw accounting functions, had unfettered access to information, and approved high-level decisions, but allege nothing specific about what the Individual Defendants knew or intended, or even what 'fraudulent' decisions they approved."

[80] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533 (citing *Abrams,* 292 F.3d at 432).

[81] *Abrams*, 292 F.3d at 432.

[82] *Id.*

simply because of the magnitude of the allegedly fraudulent events, especially in the context of large companies, will not suffice under the PSLRA.[83]  In fact, if the magnitude of the alleged violations is slight when compared to the overall size of the company, this fact will actually weigh against an inference of scienter.[84]

In sum, to survive a motion to dismiss under the PSLRA and Rule 9(b), plaintiffs must allege specific facts that support a strong inference that individual corporate defendants possessed either the intent to defraud or exhibited severe recklessness in making misstatements or omissions regarding the defendant corporation at the time the misstatement or omission occurred.

### 3.  Reliance

The Fifth Circuit analyzed the reliance requirement in *Nathenson v. Zonagen Inc.*, explaining:

> The element of reliance is the subjective counterpart to the objective element of materiality. Whereas materiality requires the plaintiff to demonstrate how a "reasonable" investor would have viewed the defendants' statements and omissions, *reliance requires a plaintiff to prove that it actually based its decisions upon the defendants' misstatements or omissions*. "Reliance is *causa sine qua non*, a type of 'but for' requirement: had the investor known the truth he would not have acted."[85]

The *Nathenson* court further explained that while materiality is determined by evaluating whether there is a substantial likelihood that the false or misleading statement "would have been viewed by the reasonable investor as having altered the 'total mix' of information made

---

[83] *Goldstein*, 340 F.3d at 251.
[84] *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 894-95.  In *Dell*, the company's net income was restated downward by less than 1% of the total net income for the period, in comparison to other cases where the court found sufficient evidence of scienter based on the magnitude and extent of the violations.  The court concluded that "any weight given to an inference of scienter because of the duration of the accounting irregularities must be tempered by their relatively small magnitude."
[85] *Nathenson*, 267 F.3d at 413 (citations omitted) (emphasis added).

available," and thus looks to *likely potential*, reliance ultimately looks to what *actually* happened. Plaintiffs must adequately allege both materiality and reliance to survive a motion to dismiss.

The Supreme Court has approved of the use of the "fraud on the market" presumption to satisfy the reliance requirement in securities fraud cases.[86]  To rely on this presumption, plaintiffs must "show that the defendant made material misrepresentations, the defendant's shares were traded in an efficient market, and the plaintiffs traded shares between the times the misrepresentations were made and the time the truth was revealed."[87]

To utilize the presumption of reliance, the plaintiff must also adequately plead loss causation.[88]  "Essentially, this circuit 'require[s] plaintiffs to establish loss causation in order to trigger the fraud-on-the-market presumption'… 'to trigger the presumption of reliance, plaintiffs must demonstrate that ... the cause of the decline in price is due to the revelation of the truth and not the release of the unrelated negative information.'"[89]  The requirements of loss causation are addressed in greater detail below.

### 4.  *Economic loss*

Plaintiffs must adequately allege actual economic loss to survive a motion to dismiss. Importantly, an "inflated purchase price will not itself constitute or proximately cause the relevant economic loss."[90]  Therefore, this Court must dismiss the Complaint unless Plaintiffs adequately plead actual economic loss.

---

[86] *Luskin et al., v. Intervoice-Brite Inc., et al.*, No. 06-11251, 2008 WL 104273 at *3 (5th Cir. Jan. 8, 2008) (unpublished opinion) (citing *Basic*, 485 U.S. at 245-46).
[87] *Id.* (citing *Basic*, 485 U.S. at 245-46).
[88] *Id.*
[89] *Id.* (citing *Oscar Private Equity Invs. et al., v. Allegiance Telecom, Inc.*, et al., 487 F.3d 261, 265 (5th Cir. 2007)).
[90] *Dura Pharm., Inc. et al., v. Broudo et al.*, 544 U.S. 336, 342 (2005).

### 5.  *Loss causation*

Loss causation is the causal connection between the material misrepresentation or omission and the economic loss.  The PSLRA requires plaintiffs to prove that the defendant's misrepresentations actually caused the loss for which the plaintiffs seek to recover.[91]  While loss causation is a prerequisite to use of the fraud on the market presumption, it need not be established by a preponderance of the evidence until the class certification stage.[92]  However, loss causation must be adequately pled by plaintiffs to survive a motion to dismiss.[93]  "Because a plaintiff must prove proximate causation and economic loss in order to establish loss causation, a plaintiff must also adequately allege these requirements in the complaint."[94]

Essentially, plaintiffs are required to allege a causal relationship between the statement or omission and actual movement of the stock price.[95]  "Loss causation cannot be satisfied simply by alleging in the complaint and subsequently establishing the price of the security on the date of purchase was inflated because of the misrepresentation."[96]  However, it may be shown either by alleging an increase in stock price immediately following the release of fraudulently positive information, or by alleging actual negative movement in stock price following the release of the alleged truth of an earlier misrepresentation.[97]

The Supreme Court in *Dura* indicated that the pleading requirements as they relate to loss causation need only comply with Rule 8, as opposed to the strict pleading requirements of Rule

---

[91] 15 U.S.C. § 78u-4(b)(4).
[92] *Luskin*, 2008 WL 104273 at *3 (citing *Oscar Private Equity Invs.,* 487 F.3d at 265).
[93] *Dura Pharm., Inc.,* 544 U.S. at 346.
[94] *In re Dell Inc., Sec. Litig.,* 591 F. Supp. 2d at 905 (citing *Dura Pharm., Inc.*, 544 U.S. at 346).
[95] *Greenberg*, 364 F.3d at 663.
[96] *In re Dell Inc., Sec. Litig.,* 591 F. Supp. 2d at 905 (citing *Dura Pharm., Inc.*, 544 U.S. at 338).
[97] *Greenberg*, 364 F.3d at 663 (citing *Nathenson*, 267 F.3d at 417-19).

9(b).[98]  As a result, plaintiffs are required to allege a short and plain statement that provides the

defendant with fair notice of what the plaintiffs' claim is and the grounds upon which it rests.[99]

This Court agrees with the district court's analysis in *Dell*, and also notes that the Fifth Circuit's

opinion in *Plotkin v. IP Axess, Inc.* stating that loss causation is subject to a heightened pleading

standard followed the *Dura* opinion by only two days and made no note of it, and therefore

*Dura*, even if somewhat equivocal in its "assumption" that neither the Rules nor the securities

statutes impose special pleading requirements, controls.[100]

      To allege loss causation, securities fraud plaintiffs must identify a corrective disclosure.

"[D]efendants in a securities fraud case may not be held liable for a decline in stock price before

the fraud is disclosed."[101]  Plaintiffs can satisfy this requirement by adequately pleading a

"corrective disclosure" that reveals a previously concealed truth, which causes a decline in the

defendant company's stock price.[102]  The district court in *Dell* explained this requirement:

> *Dura* made clear there must be sufficient allegations the misrepresentations
> caused plaintiffs' loss; it is insufficient to simply allege the misrepresentation
> "'touches upon' a later economic loss." *Plaintiffs must allege, therefore, the*
> *market reacted negatively to a corrective disclosure, which revealed the falsity of*

---

[98] *Dura Pharm., Inc.*, 544 U.S. at 346 ("[W]e assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss. But, even so, the 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'").

[99] *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 905 (citing *Dura Pharm., Inc.*, 544 U.S. at 346).

[100] *See id.* at 906, addressing the Fifth Circuit's holding in *Plotkin*, 407 F.3d at 696.

[101] *See id.*

[102] *Catogas v. Cyberonics, Inc.*, No. 07-20787, 2008 WL 4158923 at *3 (5th Cir. Sept. 8, 2008) (unpublished opinion) (citing *Dura Pharm., Inc.*, 544 U.S. at 347) ("Plaintiffs must allege, therefore, that the market reacted negatively to a corrective disclosure, which revealed the falsity of [defendant] Cyberonics' previous representations regarding the accounting for its stock options."); *see also In re Enron Corp. Sec. et al., v. Enron Corp. et al.*, 465 F. Supp. 2d 687, 724 (S.D. Tex. 2006) ("Thus, as noted *supra*, under *Dura Pharmaceuticals*, one acceptable, but not the only, way to plead proximate cause and economic loss (the difference between the price the purchaser paid and the subsequent price to which the stock dropped) in fraud on the market cases is to allege that the price a plaintiff paid for a security 'fell significantly after the truth [of the material misrepresentation or omission] becomes known' and that the disclosure of the misrepresentation or omission had a significant effect on the market price.").

*Dell's previous representations.*[103]

Under this standard, identifying a "corrective disclosure" requires, at a minimum, that the

complaint identify the prior representations called into question, along with a disclosure that

corrects them.[104] The corrective disclosure must reveal the fraud or the falsity of the prior

representation, or it will not qualify as a "corrective" disclosure. Plaintiffs must further allege a

decline in stock price following the revelation of the fraud.[105] Finally, the revelation of

confirmatory information, or information already known to the market, cannot constitute a

corrective disclosure.[106]

This court in *Odyssey Healthcare* further explained the requirement of alleging a

corrective disclosure:

> When the causal argument is, as here, that disclosure of information puts the
> market on notice of the falsity of prior representations, then the disclosure must at
> [a] minimum be of a nature that would cause recipients to identify which
> representations were the false prior representations. In other words, loss causation
> would not be established if a defendant simply said "something we told you last
> year isn't true," because that is insufficient to show that stock prices were inflated
> due to a specific misrepresentation and the market reacted when the
> misrepresentation became known.[107]

Accordingly, this Court will require Plaintiffs to plead sufficient facts to give the

Defendants fair notice of the claims against them—this standard requires Plaintiffs to identify the

allegedly misleading statements or omissions, and then allege either a correlative increase in

---

[103] *In re Dell Inc., Sec. Litig.,* 591 F. Supp. 2d at 906 (citations omitted) (emphasis added).
[104] *Id.* at 908; *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d at 888 n.4 ("In order for there to be a causal connection as required by *Dura,* however, the disclosure at [a] minimum must identify which prior representation is called into question.").
[105] *In re Dell Inc., Sec. Litig.,* 591 F. Supp. 2d at 908.
[106] *Catogas*, 2008 WL 4158923 at *3; *Greenberg*, 364 F.3d at 665-66.
[107] *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d at 888; *see also In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d at 862-63 ("Because none of the other alleged misrepresentations or omissions beyond the May 1, 2002 subscriber number projections were the subject of a corrective disclosure followed by a drop in stock price, there can be no finding that such misrepresentations or omissions caused Plaintiffs' losses.").

stock price following a falsely positive statement, or allege a subsequent decline in stock price following a corrective disclosure or revelation of the fraudulent omission.

### 6. *Safe Harbor*

The PSLRA provides a "safe harbor" for forward-looking statements when certain conditions are met. The PSLRA defines "forward-looking statements" as (i) projections of revenues, income, earnings, or other financial items, (ii) plans and objectives for future operations, and (iii) statements of future economic performance.[108] The Fifth Circuit provided the relevant test for invoking the protections of the safe harbor in *Southland Securities Corp.*:

> The safe harbor has two independent prongs: one focusing on the defendant's cautionary statements and the other on the defendant's state of mind. Under the first prong, there is no liability if, and to the extent that, the forward-looking statement is: (i) "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement," *or* (ii) "immaterial." Under the second prong, there is no liability if the *plaintiff fails to prove* that the statement (i) if made by a natural person, was made with *actual knowledge that the statement was false or misleading*, or (ii) if made by a business entity, was made by or with the approval of an executive officer of that entity with actual knowledge by that officer that the statement was false or misleading.[109]

In this context, cautionary statements must be "'substantive' company-specific warnings based on a realistic description of the risks applicable to the particular circumstances, not merely a boilerplate litany of generally applicable risk factors."[110] However, the cautionary language need not list the specific risk factor alleged to have rendered the forward-looking statement actually false.[111]

---

[108] *Plotkin*, 407 F.3d at 699 (citing 15 U.S.C. § 78u-5(i)(1)(A)- (C)).
[109] *Southland Sec. Corp.*, 365 F.3d at 371-72 (citations omitted) (emphasis added).
[110] *Id.* at 372.
[111] *In re Blockbuster Inc. Sec. Litig.*, No. 3:03-cv-398-M, 2004 WL 884308 at *5 (N.D. Tex. Apr. 26, 2004) (Lynn,

The requirement of materiality is significant in the context of forward-looking statements, as explained by this Court in *Blockbuster Inc.*:

> "Generalized, positive statements about the company's competitive strengths, experienced management, and future prospects are not actionable because they are immaterial." "Vague, loose optimistic allegations that amount to little more than corporate cheerleading are 'puffery,' projections of future performance not worded as guarantees, and are not actionable under federal securities law because no reasonable investor would consider such vague statements material and because investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts."[112]

In short, if a statement is forward-looking, Defendants may invoke the first prong of the safe harbor by showing (1) the statement was identified as forward-looking and accompanied by meaningful cautionary language, or (2) that the statement was immaterial, or mere "puffery."[113] Then, to avoid the second prong of the safe harbor, Plaintiffs must plead facts showing the statement was made with actual knowledge of its falsity.[114]  Otherwise, the allegations should be dismissed.

### C.  Analysis

Plaintiffs allege misrepresentations or omissions with respect to three categories: (1) asbestos litigation, and specifically treatment of the Highlands insurance receivable; (2) the Barracuda Project; and (3) accounting practices, specifically alleged violations of GAAP. Defendants argue that each of these categories of allegations must be dismissed for failure to meet the strict pleading requirements of the PSLRA and Rule 9(b).  Additionally, Defendants argue that the statements are protected by the safe harbor provision of the PSLRA.   This Court

---

J.).
[112] *Id.* at *7 (citations omitted).
[113] *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 912.
[114] *Id.*

will look to each of these claims in turn to determine if they meet the pleading requirements set forth above.  However, the Court first addresses several of the basic pleading requirements for securities fraud allegations as they relate to the alleged misrepresentations and omissions *in this case*.

### 1.  *Scienter*

The Complaint fails to meet the standard for pleading scienter with particularity, pursuant to the PSLRA and Rule 9(b).  While Plaintiffs may rely on circumstantial evidence to allege scienter, they must still "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"—i.e., intent to defraud or severe recklessness. To establish scienter, Plaintiffs allege in ¶8 of the Complaint that:

> Because of Lesar's position with the Company, he had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

Plaintiffs allege in ¶9 that:

> [L]arge-scale construction contracts and asbestos-related liabilities represent central components of Halliburton's corporate operations…Lesar, in his capacity as a key officer and director of the Company, is deemed to have intimate knowledge of those activities… This observation applies with particular emphasis here, given that Lesar is a Certified Public Accountant.  Undoubtedly, he would take special notice of matters such as secret changes in accounting practices and the establishment of reserves to cover enormous legal liabilities, exactly the subject matter of the misrepresentations and omissions alleged in this Complaint, because these are issues that would—and did—directly affect Halliburton's financial statements and performance.

Plaintiffs allege in ¶11 that "[b]ecause of his Board membership and executive and managerial positions with Halliburton, Lesar had access to the adverse undisclosed information about Halliburton's financial condition and performance…," and in ¶155 that the "knowing and/or reckless violations of GAA[P] are direct evidence of Defendants' scienter."

The Fifth Circuit requires this Court to (1) accept all factual allegations in the Complaint as true, (2) consider the Complaint in its entirety, and (3) take into account plausible opposing inferences.[115]  However, this Court is not to rely on conclusory allegations or impermissible group pleading.  This Court looks to the Complaint to determine if the *facts* alleged, taken collectively, give rise to a strong inference of scienter.  The Complaint in this case is almost entirely devoid of *facts* supporting an inference of scienter.  Plaintiffs make vague and conclusory allegations that Lesar had access to or possessed adverse information because he was an officer of Halliburton.  But the Fifth Circuit has made it abundantly clear that a pleading of scienter may not rely on the inference that defendants "must have" been aware of information or misstatements based on their positions within the company.[116]

Unsupported general allegations about the existence of corporate documents that reveal or contain information that is contrary to alleged misrepresentations are insufficient as allegations of scienter.[117]  Plaintiffs are required to specifically plead corroborating information, such as the specific contents of the allegedly contrary reports, who authored the reports, who received the reports, and when they were received.[118]  Additionally, the mere publication of

---

[115] *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533.
[116] *Id.* at 535; *Abrams,* 292 F.3d at 432; *Nathenson*, 267 F.3d at 424.
[117] *Abrams*, 292 F.3d at 432.
[118] *Id.*

inaccurate accounting figures, or the failure to follow GAAP, does not alone establish scienter.[119]

And the fact that Plaintiffs fail to allege suspicious sales of stock, i.e., insider trading in

suspicious amounts and/or at suspicious times during the class period, undermines the Plaintiffs'

allegations of scienter.[120]

      The Court finds that, even accepting all factual allegations as true and viewing the

Complaint in its entirety, Plaintiffs do not meet the strict pleading requirements for scienter

under the PSLRA.[121]   For example, in ¶121 of the Complaint, Plaintiffs provide a list of excerpts

from a "Responsibility for Financial Reporting" commitment, executed by Lesar, and claim that:

> These statements were materially misleading because they failed to reveal that the
> internal controls at Halliburton were woefully inadequate because, at minimum,
> they (1) failed to cause correction of the 1998 accounting change for the treatment
> of Unapproved Claims which was in violation of GAAP, (2) did not compel
> disclosure of the dismal circumstances and significant losses surrounding the
> Barracuda project, and (3) allowed Defendants to pursue their course of
> deceptively minimizing the extent of Halliburton's asbestos liability.

This conclusory allegation does not adequately plead scienter under the PSLRA.  Plaintiffs fail to

identify with particularity which statements in the commitment were misleading, and why.  But

---

[119] *In re Dell Inc., Sec. Litig.,* 591 F. Supp. 2d at 893 (citing *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 534).

[120] *See Nathenson,* 267 F.3d at 421.  In this case, Plaintiffs' allegation in ¶194 that "the insider trades in 2000 of Individual Defendants and other top executives of a multi-million dollar size were made with inside information about the change in accounting policies and the potential of the asbestos liability" contribute to "a strong inference of scienter with respect to the statements made in the Halliburton 2000 and 2001 10-K's and other representations cited in this Complaint" is wholly unsupported by Fifth Circuit precedent.  Insider trading will only support an inference of scienter if it occurs in suspicious amounts or at suspicious times, *during the class period*.  Sales of stock before the class period began will contribute nothing to the inference of scienter regarding statements made during the class period.

[121] The Court notes that Plaintiffs' allegations that "Halliburton and Lesar" knew a laundry list of facts in ¶¶187-193 are insufficient to establish scienter, as they fail to allege who knew these facts, when they learned them, or how they learned them.  *See Ind. Elec. Workers Pension Trust Fund IBEW*, 537 F.3d at 542 (where the Fifth Circuit found the plaintiffs failed to state with particularity facts giving rise to a strong inference of scienter as to the defendants because the complaint did not "indicate how or when the officers [defendants] became aware of what the confidential source allegedly knew" regarding the fraudulently omitted information).  In short, bare and conclusory allegations of knowledge and/or information cannot support a strong inference of scienter.

more importantly, Plaintiffs do not plead any fact that supports an inference that Lesar acted with the intent to deceive investors, or with severe recklessness, in issuing the commitment.  The PSLRA requires plaintiffs to plead specific facts that give rise to a strong inference of scienter, and conclusory allegations about the Defendants' general failure to reveal bad news to the market, when the Complaint fails to even allege knowledge of such news, are clearly insufficient to survive dismissal.[122]

### 2.  *Reliance and Loss Causation*

In ¶¶196-197, Plaintiffs allege that "the market for Halliburton's securities was an efficient market," and that "the market for Halliburton's securities promptly digested current information regarding Halliburton from all publicly available sources and reflected such information in Halliburton's stock price."  Plaintiffs thereby seek to establish the fraud-on-the-market presumption of reliance.  The Supreme Court in *Basic* provided the test for the fraud-on-the-market presumption of reliance:

> [A] plaintiff must allege and prove: (1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the shares were traded on an efficient market; (4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the shares; and (5) that the plaintiff traded the shares between the time the misrepresentations were made and the time the truth was revealed.[123]

---

[122] Plaintiffs cannot simply rely on the conclusory allegations of scienter found at the beginning of the Complaint to support a strong inference of scienter as to all statements identified as misrepresentations throughout the remainder of the Complaint, for the reasons stated above.  Additionally, Plaintiffs allege in ¶175 that the New York Times published an article on May 22, 2002, which reported that the allegedly fraudulent accounting change regarding the recognition of claims and change orders was "specifically approved by David Lesar."  However, this allegation alone is insufficient to establish scienter as to Lesar.  First, Plaintiffs do not plead the factual basis for this report. They also fail to allege that because of Lesar's specific approval of the accounting change, any financial statements signed or approved by Lesar were intentionally fraudulent or made with severe recklessness.  In short, Plaintiffs cannot simply point to a news article reporting that Lesar approved an accounting practice to support an inference of scienter as to all accounting statements made during the class period.  Allowing such an allegation to substantiate a "strong inference" of scienter would essentially read the requirement out of the statute.

[123] *Basic Inc.,* 485 U.S. at 248 n.27.

The Fifth Circuit tightened the requirement for the presumption of reliance in *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, explaining that plaintiffs must prove "that the misstatement actually moved the market."[124]  Essentially, plaintiffs must adequately allege loss causation in order to rely on the presumption of reliance.[125]

This Court finds that the Plaintiffs' failure to properly allege loss causation presents another ground upon which the Complaint should be dismissed.  While the Supreme Court in *Dura Pharmaceuticals* declined to adopt a heightened pleading standard for loss causation,[126] a complaint must still provide the defendants with fair notice of what the plaintiffs' claims are and the grounds upon which they rest.  Despite the myriad of statements identified in the subject Complaint, the Plaintiffs simply fail to connect the alleged misrepresentations with correlative corrective disclosures during the Class Period.  A corrective disclosure, at a minimum, requires that the prior misrepresentation be identified, and that the fraud of the prior representation be revealed to the market, which subsequently reacts by adjusting the stock price thereby harming the plaintiffs.

The *only* alleged drop in stock price is found in ¶136 of the Complaint.  There, Plaintiffs allege a 25% decline in stock price following disclosures made on July 22, 2002, regarding Halliburton's likely net asbestos liability and a pretax loss incurred on the Barracuda Project due to unapproved claims.  However, Plaintiffs fail to allege which prior representations were revealed to be fraudulent by these statements.  This is especially important given that different

---

[124] *Oscar Private Equity Invs.*, 487 F.3d at 265.
[125] *Id.*
[126] There, the Supreme Court applied the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) in evaluating the plaintiffs' allegations of loss causation.  *Dura Pharm.*, 544 U.S. at 346; *see also In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 906.

types of negative news were released the same day, and the market's reaction could have been to either announcement, to both, or to other market forces.  The Complaint is simply devoid of facts connecting a misrepresentation with a specific corrective disclosure and an accompanying market reaction.  The Fifth Circuit requires more to establish the presumption of reliance.

Plaintiffs allege in ¶154 that "[t]he devaluations traceable to the disclosures of the accounting change in May 2002, the offshore financing subsidiary in mid-July 2002, and the asbestos and Barracuda losses in mid-July 2002 demonstrate loss causation of a substantial magnitude—over one billion dollars."  They also allege that "[t]he stock drops, the diminution of shareholders' equity, and the dilution of the stockholders' ownership are statistically significant, company specific losses not due to general stock market movements, changed economic conditions, changed investor expectations, or company specific negative events unrelated to the alleged misrepresentations, non-disclosures, and cover-ups."  But these conclusory allegations regarding loss causation are simply not enough to meet the pleading requirements for a securities fraud action.

Further, the Complaint in ¶181 lists statements from "pre-Class Period and Class Period SEC filings" that were allegedly fraudulent, because they certified that the accompanying financial statements were prepared in accordance with GAAP, when in fact Plaintiffs allege numerous violations of GAAP.  However, in addition to the complete dearth of specificity in identifying exactly what portion of these statements was fraudulent and why, Plaintiffs also fail to allege a corrective disclosure during the Class Period.  Plaintiffs do not allege an increase in stock price following the publication of these statements, and do not allege a decline in stock price following any correction of these statements.

Plaintiffs' allegation in ¶153 that "Defendant's [sic] materially false and misleading statements resulted in plaintiff and other members of the Class purchasing Halliburton's securities at artificially inflated prices, thus causing the damages complained of herein," is insufficient to establish loss causation, since the United States Supreme Court made clear in *Dura Pharmaceuticals* that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss" in a securities fraud action.[127]  Without adequately alleging a causal connection between a material misrepresentation and an economic loss, the Plaintiffs' allegations cannot survive at this stage of the litigation.

### 3. *Economic Loss or Damages*

Plaintiffs have not adequately pled economic loss.[128]  The Complaint, in ¶¶ 13, 153, 154, and 197, states that the allegedly false and/or misleading statements identified in the Complaint resulted in Plaintiffs "purchasing Halliburton's securities at artificially inflated prices, thus causing the damages complained of herein."  Since an inflated purchase price alone is insufficient to constitute economic loss, the Complaint fails for failure to adequately plead economic loss.  Notably, ¶154 states that "the sharp decline in the stock's price which accompanied the gradual disclosure of the truth resulted in enormous damages to the class," but the Complaint never specifically alleges when and in what amounts the stock price declined following identified corrective disclosures during the Class Period.  Conclusory allegations of a decline in stock price without specific facts pled in support are insufficient.  The Complaint must provide the Defendants with "notice of what the relevant economic loss might be or of what the

---

[127] *See Dura Pharm., Inc.,* 544 U.S. at 342.
[128] *Id.*

causal connection might be between that loss and the misrepresentation" alleged.[129]  No such notice is given by the Plaintiffs, beyond a vague and conclusory allegation that a "gradual disclosure of truth" resulted in "enormous damages to the class."  This is simply not enough to provide Defendants with the notice required by the Rules and the applicable securities law. Further, and importantly, Plaintiffs do not rely on this alleged "sharp decline" in claiming damages, but instead state that "all purchasers of Halliburton's securities during the Class Period suffered similar injury through their *purchase of Halliburton's securities at artificially inflated prices*."[130]  As a result, Plaintiffs have failed to adequately plead economic loss, and their claims must be dismissed.

### 4.  *Group Pleading and Third Party Statements*

The Court finds that many of the statements Plaintiffs identify as misleading are pled using impermissible group pleading.  For example, in ¶97 of the Complaint, Plaintiffs allege that "the Company continued to assure the public that clear skies were just ahead, and it repeated its stated belief that 'open asbestos claims will be resolved without a material adverse affect on our financial position or the results of operations.'"  Plaintiffs allege that this statement was "materially misleading" in light of "Defendants' actual knowledge or reckless disregard" that the Company's actual asbestos exposure exceeded that reported to investors.  However, the allegedly misleading statement is not attributed to any speaker.  The prohibition against group pleading applies with equal force to misstatements attributed to "Defendants," as it does to allegations of scienter as to "Defendants."  For example, in ¶109, Plaintiffs allege that a statement attributed to Douglas L. Foshee, Halliburton's Executive Vice President and Chief Financial Officer, was

---

[129] *Id.* at 347.
[130] See Plaintiffs' Amended Complaint at ¶197.

materially misleading in light of "Defendants' actual knowledge or reckless disregard" of adverse facts.  The PSLRA specifically requires that facts supporting a strong inference of scienter as to particular defendants be pled, in addition to pleading the misrepresentation itself with particularity, and as a result any allegations using group pleading are insufficient.[131]

The Court hereby grants Defendants' Motions to Dismiss as they pertain to any allegations based on group pleading, i.e., statements *or* scienter attributed to "Defendants," or "Halliburton," or "Management," without prejudice to Plaintiffs' re-pleading these allegations with the requisite particularity.  Along with group pleading, bare and conclusory allegations of knowledge or recklessness will not stand, as the PSLRA requires Plaintiffs to plead specific facts giving rise to a strong inference of scienter.  Should Plaintiffs choose to re-plead these allegations, they must do so with these stringent requirements in mind.

Plaintiffs also attempt to attribute certain statements made by third parties to the Defendants.  For example, ¶98 points to a New York Times article published on December 8, 2001, where the author, Neela Banerjee, hypothesized that fear generated from Enron's "rapid demise" contributed to the large volume of trading following press releases that revealed several recent adverse asbestos verdicts against Halliburton and/or its subsidiaries.  Plaintiffs point to this article and claim that "Halliburton perpetuated the belief that the December 8, 2001 drop in the stock's price had more 'to do with Enron' than with any disclosures made by the Company."[132]  However, Plaintiffs failed to allege any facts that would connect an individual

---

[131] *See Southland Securities Corp.*, 365 F.3d at 365.

[132] Plaintiffs also claim that Lesar's own statements in response to this theory, that "We couldn't be any more different from Enron," and "We're profitable, we have plenty of liquidity.  It was a jury verdict of $30 million, and we intend to appeal," were "materially misleading in light of Defendants' actual knowledge or reckless disregard that the Company's actual exposure to asbestos liability exponentially exceeded that reported to investors."  Not

Defendant with the opinions expressed by the author of the New York Times piece.  Such allegations cannot stand.

The Court adheres to its holding in *Archdiocese of Milwaukee Supporting Fund v. Halliburton*,[133] that Plaintiffs are required to plead with particularity who participated in providing information to an analyst or a third party, when and where this information was provided, how any Defendant either adopted the opinion and/or how the Defendants were entangled with the opinion, or how the analyst or third party was a "conduit" for the Defendant. The Fifth Circuit has made clear that plaintiffs are required to allege with specificity any exceptions to the general rule that "securities issuers are not liable for statements or forecasts disseminated by securities analysts or third parties."[134]  As a result, the Court grants the Defendants' Motions to Dismiss, as they relate to any statements made by analysts or other third parties, without prejudice to Plaintiffs' re-pleading these statements with the requisite particularity.  If Plaintiffs cannot cure this fatal defect, along with the impermissible group pleading and the lack of the requisite proof of a strong inference of scienter upon repleading, dismissal with prejudice is the likely next step.

Although the Court has already identified a number of reasons why Defendants' Motions to Dismiss should be granted, it will still address those individual statements it could cull from the Complaint where a particular speaker was properly identified, to determine the sufficiency of these allegations.

---

only does this allegation fail because it relies on group pleading and conclusory allegations of scienter, but Plaintiffs fail to identify with particularity anything actually false within this statement.  As such, this allegation also fails.
[133] *Archdiocese of Milwaukee Supporting Fund, Inc., et al, v. Halliburton Co., et al*, Civil Action No. 3:02-CV-1152-M, March 14, 2006 Order on Motions to Dismiss, Docket Entry #239.
[134] *Southland Securities*, 365 F.3d at 373.

5.   *Misrepresentations or Omissions*

   a.   *Asbestos Litigation and the Highlands Receivable*

      i.   *December 11 and December 14, 2001 press releases*

The Complaint alleges in ¶105 that, with reference to Standard & Poor's recent downgrading of its debt rating on Halliburton, Lesar stated in a December 11, 2001 press release the following: "We are pleased to see that we continue to hold strong investment grade ratings with Standard & Poor's in light of all that has happened in the last few days," and stressed "the strength of our balance sheet."  Plaintiffs allege that the balance sheet statement was "false and misleading in light of the Company's actual asbestos liabilities…"

This statement is not actionable.  First, Plaintiffs must allege *facts* that give rise to a strong inference that Lesar spoke either with the intent to defraud or deceive investors, or with severe recklessness such that his statement qualified as a highly unreasonable misrepresentation that involved not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that it presented a danger of misleading buyers or sellers which was either known to Lesar or was so obvious that Lesar must have been aware of it.[135]  But here, Plaintiffs do not allege *any facts* regarding scienter.  Further, "vague, loose optimistic allegations that amount to little more than corporate cheerleading are 'puffery,' projections of future performance not worded as guarantees, and are not actionable under federal securities law because no reasonable investor would consider such vague statements material and because investors and analysts are too sophisticated to rely on vague expressions of optimism rather than

---

[135] *See Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533.

specific facts."[136]

And for the same reasons, the statements from a December 14, 2001, press release identified in ¶106 of the Complaint are also deficient.  There, Lesar repeated positive representations about Halliburton's balance sheet and strong investment rating, and opined that Halliburton was a "conservatively financed company with substantial resources."  Lesar's discussion of Halliburton's strong balance sheet amounts to immaterial puffery, and the Complaint again fails to allege any facts that would support any inference of scienter.  The same defects apply to Lesar's statement that Halliburton was a "conservatively financed company," as Plaintiffs fail to allege that Lesar made this statement with the intent to deceive or was severely reckless in doing so.   A company is under no obligation to cast itself in a pejorative light, and Lesar's statements are not actionable merely because he spoke optimistically about Halliburton's future on these occasions.[137]

> *ii.      January 23, 2002 press releases*

The Complaint alleges in ¶110 that in a press release, referring to Halliburton's 2001 fourth quarter results, Lesar stated: "We were disappointed that excellent operational results were overshadowed by the market's overreaction to asbestos news, but believe that our patient investors will be rewarded."  Plaintiffs allege this statement was "false and misleading" because:

> Lesar was aware of Harbison's precarious financial situation and Dresser's
> responsibility for the claims against it and Harbison, he knew that Halliburton was
> going to financially support Harbison's bankruptcy and that Dresser would seek
> to have all asbestos cases stayed by the bankruptcy court, and he knew that an
> expert was being retained to assess Halliburton's asbestos liability.

Once more, Plaintiffs fail to plead any specific facts giving rise to a strong inference of scienter,

---

[136] *In re Blockbuster Inc. Sec. Litig.*, 2004 WL 884308 at *7.
[137] *See id.* at *13.

such as how and when Lesar became aware of specific information that rendered the above statement intentionally false or severely reckless.  The only allegations pertaining to scienter are generalized assertions in the introductory portions of the Complaint that:

> Because of Lesar's position with the Company, he had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents…conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof via reports and other information provided to them in connection therewith.

But these vague allegations amounts to nothing more than an impermissible assertion of positional scienter.  It is well settled in the Fifth Circuit that a "pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company."[138]  Because the Complaint identifies no contemporaneous and specific facts that relate to Lesar and his knowledge of the Harbison bankruptcy proceedings, or to his retention of an expert to assess asbestos liability, this Court cannot find that the Complaint alleges facts giving rise to a strong inference of scienter.

Lesar's statement was also devoid of actual "facts" that are typically digested by the market in evaluating a company's worth, and statements that Halliburton had an "outstanding year" and that "our patient investors will be rewarded" are immaterial as a matter of law. Further, Plaintiffs have failed to allege anything actually false about Lesar's statement.  As a result, the statement is not actionable.

Plaintiffs also point to a statement by Lesar issued on this date in response to Moody's downgrading of Halliburton's credit rating, that "Moody's has taken this step mainly because of

---

[138] *See e.g.*, *Abrams*, 292 F.3d at 432.

concerns about asbestos-related litigation following several unusual awards that we believe will not be sustained by the appellate courts.  Halliburton has successfully managed asbestos-related liabilities and settled more than 201,000 claims over a 25 year period at an average cost of $200."  Plaintiffs claim that these statements were false and misleading "because they [the awards] were not unusual in that one decision confirmed a settlement agreement that Dresser disputed and Dresser was responsible for claims against it and Harbison."  Plaintiffs also contend that "Lesar misleadingly tried to characterize the value of the current claims outstanding as being in a similar range [average cost of $200] when he knew that Halliburton was set to finance Harbison's bankruptcy and an expert was prepared to evaluate Halliburton's asbestos liability and that [] $125 million net liability reserve was materially inadequate."

These allegations likewise fail.  Plaintiffs' conclusory allegations that Lesar "knew" certain facts that would render the statements misleading are insufficient under the PSLRA. Plaintiffs must allege specific facts that create a strong inference that Lesar made these statements with the intent to deceive investors, or was severely reckless in doing so, and Plaintiffs fail to do so.  Further, Lesar's statement that he believed the "unusual awards" would not be sustained by the appellate courts is a forward-looking statement of opinion.  To be actionable, Plaintiffs must allege that Lesar knew this statement was false when he made it.  No such facts are pled.

Plaintiffs return to this statement in ¶126, alleging that the 2002 1st Quarter SEC Form 10-Q, filed by Halliburton and signed by Douglas Foshee and Robert C. Muchmore (Halliburton's Controller), stated that "since 1976 Halliburton had closed 207,000 claims for a net (after insurance) cost of $309 per claim," and that "citation of a $309 per claim figure

showed that its previously reported $200 per claim figure was false and misleading." While such allegations might otherwise constitute a corrective disclosure, Plaintiffs are still required to meet the scienter requirement of the PSLRA. Nothing about the Form 10-Q reveals anything fraudulent behind Lesar's prior statement, and the Plaintiffs do not allege any facts to support an inference that Lesar intentionally misstated the average cost of settling asbestos claims, or that he acted with severe recklessness in doing so. The small magnitude of the misstatement, relative to Halliburton's overall financial picture, also weighs against any inference of scienter.[139]

### iii.     July 22, 2002 press release

In ¶133 of the Complaint, Plaintiffs cite statements made by Lesar in a press release where Halliburton revealed that it would be taking a substantial charge based on a study of the company's asbestos liability, which had been commissioned by Halliburton earlier that year. However, Plaintiffs fail to allege that any of these statements actually correct any prior representations about Halliburton's asbestos liabilities, nor do they allege any fraud in the statements themselves. As a result, the Court will not treat these statements as either actionable misrepresentations, or corrective disclosures.

### iv.     Omission of net asbestos liability

In ¶143 of the Complaint Plaintiffs allege that "from at least the 3rd Quarter of 2001 through the end of the Class Period, Halliburton's executives, including Lesar, had knowingly failed to disclose a billion dollar plus net asbestos liability." While a material omission is actionable under §10(b), Plaintiffs must meet the pleading requirements of the PSLRA and Rule 9(b) to survive a motion to dismiss a claim of fraudulent omissions. Specifically, Plaintiffs must

---

[139] *See In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 895 ("Therefore, any weight given to an inference of scienter because of the duration of the accounting irregularities must be tempered by their relatively small magnitude.").

assert specific facts including: (1) the type of facts omitted; (2) the place in which the omissions should have appeared; (3) the way in which the omitted facts made identified representations misleading; (4) specify the statement that is misleading due to the omission in the same manner as a misrepresentation, i.e., the who, what, when, and where; and (5) if the misleading nature of the statement is not apparent from the content of the statement and the substance of the omissions, the factual allegations of the complaint must set forth an explanation of why the omission rendered the statement misleading with particularity.[140]

While Plaintiffs allege the type of facts omitted—information regarding Halliburton's future asbestos liabilities—they fail to allege any other facts that would sustain a claim of fraudulent omission(s).  Plaintiffs do not state when or how the information should have been revealed.  Plaintiffs do not pinpoint any prior representations that were misleading because of the omission.  At various points in the Complaint, Plaintiffs refer to prior statements in SEC filings relating to pending asbestos claims, but none related to *future liabilities*.  Without identifying the representations rendered misleading by the alleged omission, Plaintiffs cannot maintain this allegation of securities fraud.

Further, Plaintiffs' conclusory allegation regarding Lesar's knowledge of net asbestos liability is insufficient to survive dismissal, as the PSLRA requires specific facts that support a strong inference that Lesar intentionally omitted the information or did so with severe recklessness.  Such an inference is belied by the revelation in its 2002 1st quarter 10-Q that Halliburton had recently retained "a leading claim evaluation firm to assist us in making an estimate of our potential liability for asbestos claims that may be asserted against us in the

---

[140] *See In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d at 892.

future," and "it is likely that we will accrue a material liability for future claims that may be asserted against us."[141]  This revelation suggests that Halliburton was unsure about its potential asbestos liability, and was keeping investors apprised of the situation as information became available.  Because Plaintiffs have failed to sufficiently plead the fraudulent omission with particularity, and have failed to adequately allege scienter, this claim also fails.

*v.*      *The Highlands Receivable*

In ¶122 of the Complaint, Plaintiffs point to a misstatement in the form of Halliburton's inclusion of a $35 million receivable from Highlands insurance in its calculation of its asbestos reserve, in the March 12, 2002 Form 10-K.  According to Plaintiffs, inclusion of the reserve was improper because a trial court had ruled against Halliburton with respect to the insurance coverage.  Then in ¶123, Plaintiffs point to a March 14, 2002, press release following the Delaware Supreme Court's affirmance of the judgment against Halliburton in the dispute over the receivable, where Lesar stated that "we are surprised" and announcing that the expected insurance from Highlands of $80 million would have to be taken as a write-off.

The inclusion of the receivable in the Form 10-K is not actionable for a number of reasons.  First, Plaintiffs fail to allege that the financial statement was made with the requisite scienter.  In fact, Halliburton contemporaneously stated that "[w]e believe the Chancery Court is wrong and that the Delaware Supreme Court will reverse and return the case to the Chancery Court for a trial on the merits.  We expect, based on an opinion from outside legal counsel, to ultimately prevail in the litigation."  These statements undermine an inference that the Defendants included the receivable with the intent to mislead investors, or with severe

---

[141] *See* Plaintiffs' Amended Class Action Complaint at ¶126.

recklessness.  Also, Plaintiffs' allegations in ¶¶183-185 that inclusion of the Highlands receivable on its books was a violation of GAAP are insufficient to support a strong inference of scienter.  Viewing the Complaint in its entirety, this Court cannot hold that Plaintiffs pled facts that give rise to a strong inference that the Defendants included the receivable with the intent to defraud investors or with severe recklessness.  In addition to failing to adequately plead scienter, Plaintiffs also fail to allege any stock price decline following the March 14, 2002, press release revealing the write off.  As such, loss causation has not been pled, and the allegation fails.

### b.  The Barracuda Project

#### i.   12/31/01 SEC Form 10-K filed March 12, 2002

In ¶120 Plaintiffs allege that Lesar signed an SEC Form 10-K, but was "aware of cost overruns on the Barracuda project," and "did not disclose these losses or the virtual certainty of additional losses (which would ultimately reach over $700 million and lead to the announcement that the Company would not again enter such fixed price contracts, or discuss the effect and potential effect on liquidity)."  Therefore, Plaintiffs argue that "the March 12, 2002 10-K was false and misleading."

While Plaintiffs properly attribute the Form 10-K to Lesar, they fail to adequately allege scienter.  Conclusory allegations regarding Lesar's knowledge of certain things will not suffice.  Plaintiffs must provide specific facts that give rise to a strong inference that Lesar signed the Form 10-K with the intent to deceive investors, or with severe recklessness.  There are no such facts pled with regard to the SEC form.

Additionally, when alleging fraudulent omissions, Plaintiffs must allege the type of facts omitted, where these omissions should have appeared, how the omitted facts rendered the

representations misleading, identify which statements are misleading due to the omission in the same manner as a misrepresentation, and explain why the omission rendered the statements misleading with sufficient particularity.[142]

Plaintiffs in this case fail to allege with specificity how the Form 10-K was misleading without the information regarding cost overruns, or specifically which information about the overruns should have been included.  They do not allege how large the overruns were at the time of the filing of the Form 10-K, or how Lesar knew about them.  Such vague allegations of knowledge and "fraud by hindsight" are insufficient under the PSLRA, and cannot survive here.

### c.   *Change in Accounting Practices and Violations  of GAAP*

#### i.   *12/31/01 SEC Form 10-K filed March 12, 2002*

In ¶120, Plaintiffs allege Lesar signed an SEC Form 10-K, but "Halliburton did not reveal that its income had been artificially and improperly increased by virtue of the 1998 accounting change for Unapproved Claims."  Therefore, Plaintiffs allege that the March 12, 2002, 10-K was "false and misleading."  As set forth above, when alleging fraudulent omissions, Plaintiffs must plead the omission with particularity.  That standard is not met here.  First, Plaintiffs improperly rely on group pleading when alleging that "Halliburton" did not reveal the information.  Plaintiffs additionally fail to allege with specificity any facts indicating who was aware of the cost overruns, or how they were aware of such information.  Plaintiffs do not allege what specific facts regarding the unapproved claims should have been revealed, or where and when they should have been revealed.  As a result, this claim cannot survive.

---

[142] *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d at 892.

### 6.  *Section 20(a) Liability*

Because the Court dismisses the Complaint for failure to meet the strict pleading requirements for a securities fraud action, liability cannot be independently maintained for control person liability under §20(a), and these claims must likewise be dismissed.[143]

### D.  Conclusion

The Court finds that Defendants Halliburton and Lesar's Motions to Dismiss should be GRANTED for: (1) failure to adequately plead scienter; (2) failure to plead reliance or loss causation; (3) failure to allege economic loss; (4) impermissible use of group pleading; (5) impermissible conclusory allegations; and (6) immaterial puffery.  All other grounds asserted for dismissal of the Complaint are hereby DENIED.[144]

This dismissal is without prejudice to the Plaintiffs filing a Second Amended Complaint which complies with the strict pleading requirements set forth above.  However, the Court warns Plaintiffs that should they file a Second Amended Complaint suffering from the same deficiencies, the Court will not grant leave to correct the same infirmities identified above.  As observed by the Fifth Circuit:

> A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail. This court has noted that "although the requirement for particularity in pleading fraud does not lend itself to refinement, and it need not in order to make sense, nevertheless, directly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted." "In securities fraud suits, this

---

[143] *See Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 545 ("Although the plaintiffs alleged that Bernhard and Belk are liable as control persons under Section 20(a) of the Securities Exchange Act of 1934, '[c]ontrol person liability is secondary only and cannot exist in the absence of a primary violation.' *Southland,* 365 F.3d at 383. Because we have found the pleadings of Section 10(b) and Rule 10b-5 liability inadequate, and because plaintiffs have furnished no independent briefing on this claim, it must be dismissed.").

[144] The Court notes that it did not address Defendants' argument that certain statements are protected by the safe harbor provision of the PSLRA.  This Order shall in no way prejudice Defendants' ability to reassert this argument in a subsequent Motion to Dismiss should Plaintiffs choose to replead the allegations underlying this argument.

heightened pleading standard provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs."[145]

It is with these policy considerations in mind that this Court dismisses Plaintiffs claims, but allows them another chance to meet the stringent requirements set forth by the Federal Rules and the securities law discussed above.

      **SO ORDERED** this 31st day of March, 2009.

                    **BARBARA M. G. LYNN**
                    **UNITED STATES DISTRICT JUDGE**
                    **NORTHERN DISTRICT OF TEXAS**

---

[145] *Southland Sec. Corp.*, 365 F.3d at 362 (citations omitted).