IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICIA A. MAGRUDER, on Behalf of Herself and All Others Similarly Situated, | § § § § § | |
| Plaintiff, | § | |
| v. | § § | Civil Action No. 3:05-cv-01156-M |
| HALLIBURTON COMPANY and DAVID J. LESAR, | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") [ECF No. 96]. For the reasons stated below, the Motion is **GRANTED**.

## I.  Factual and Procedural Background

Plaintiff Patricia A. Magruder brings this action against Halliburton Company and its former CEO, David Lesar, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. [ECF No. 94 ¶¶ 1, 177–90]. Halliburton is a public corporation that provides "products and services to the petroleum and energy industries." [*Id*. ¶ 3]. Plaintiff maintains that Defendants (1) omitted material information in public statements regarding cost overruns of the "Barracuda-Caratinga" project, (2) omitted material information in public statements regarding asbestos liabilities, insurance coverage, and the liquidity of a subsidiary, (3) violated an SEC order, and (4) "disclosed a bribe made in Nigeria" in a Form 10Q filing as a result of which class members were damaged. Plaintiff seeks to bring this action on behalf of public investors who purchased or otherwise acquired Halliburton common stock on the open market between December 8, 2001 and July 22, 2002. [*Id*. ¶ 1].

This case was originally severed from a separate class action lawsuit against Halliburton and its officers.[1]  *See Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152, slip op. at *1 (N.D. Tex. June 3, 2005).  Plaintiff's Amended Complaint was previously dismissed with leave to amend.  [ECF No. 40 at 1].  Plaintiff was warned "that should [she] file a Second Amended Complaint suffering from the same deficiencies," she would not be granted leave to "correct the same infirmities" identified by the Court.  [*Id*. at 45].  Plaintiff, thereafter, filed the Second Amended Complaint [ECF No. 53], and Defendants again moved to dismiss.  [ECF No. 67].  The Court granted Defendants' motion to dismiss but again granted Plaintiff "leave to address the defects identified in [the Court's] Order by filing an amended complaint."  [ECF No. 93 at 22].  Plaintiff then filed her TAC and Defendants now move to dismiss this latest complaint.  [ECF Nos. 94, 96].

**II.   Legal Standard**

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The pleading standard that Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Twombly*, 550 U.S. at 570.  A court must accept all factual allegations as true, but it is not bound to accept as true "a legal conclusion couched as a factual allegation."  *Id.* at 555.  Where the facts do not permit a court to infer more than the mere possibility of misconduct, the

---

[1] This action has remained pending for an extremely long period as it was stayed by agreement several times during appeals in the *Erica P. John Fund* action, including during several appeals to the United States Supreme Court.

complaint has stopped short of showing that the pleader is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.

To state a claim under Section 10(b), a plaintiff must plead: (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (citing 15 U.S.C. 78j(b)). In addition, a plaintiff must meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2).

To plead a material misrepresentation adequately under the PSLRA, a plaintiff must (1) specify each statement alleged to have been misleading, (2) identify the speaker, (3) state when and where the statement was made, (4) plead with particularity the contents of the misrepresentations, (5) plead with particularity what the person making the misrepresentation obtained thereby, and (6) explain the reason or reasons why the statement is misleading. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 245 (5th Cir. 2003).

To plead a material omission adequately, a plaintiff must "plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004). A plaintiff must "specify the statement that is misleading due to the omission in the same manner as a misrepresentation, i.e., the who, what, when, and where." *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 893 (N.D. Tex. 2005). If the misleading nature of the statement is not apparent from the content of the statement and the substance of the omissions, the factual allegations of the complaint must set forth an explanation of why the omission rendered the statement misleading. *Id.* at 894; *see also Indiana Elec.*

*Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 541 (5th Cir. 2008) ("[I]n other words [the omission] must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."). Finally, a plaintiff must plead with particularity the facts giving rise to a duty[2] to disclose the material information. *Shaw Grp., Inc.*, 537 F.3d at 541.

To plead scienter adequately, the PSLRA instructs a plaintiff to "state with particularity facts giving rise to a strong inference" that each defendant acted with "intent to deceive, manipulate, or defraud or [with] severe recklessness." *Id.*; *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (citation omitted). Severe recklessness is limited to those "highly unreasonable . . . misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care." *Jastrow*, 789 F.3d at 535 (citation omitted). Scienter must exist at the time the alleged misrepresentation occurred. *Budde v. Global Power Equip. Grp., Inc.*, No. 3:15-cv-01679-M, 2017 WL 6621540, at *2 (N.D. Tex. Dec. 27, 2017).

To qualify as "strong," the inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). This requires a court to "engage in a comparative evaluation," weighing "not only inferences urged by [the plaintiff] . . . but also competing inferences rationally drawn from the facts alleged." *Id.* Conclusory allegations are not sufficient. *See Shaw Grp.*, 537 F.3d at 538–39

---

[2] "An affirmative duty to disclose arises when (1) a corporate insider trades on confidential information; (2) a corporation has made inaccurate, incomplete or misleading prior disclosures; or (3) a statute or regulation requires disclosure." *See Magruder v. Halliburton Co.*, No. 3:05-cv-01156-M, 2009 WL 854656, at *4 (N.D. Tex. Mar. 31, 2009).

4

(holding that "general allegations and conclusory statements, such as stating [that a defendant] knew . . . adverse material" cannot support a strong inference of scienter).  A court must "assess all the allegations holistically," not each in isolation.  *Tellabs,* 551 U.S. at 326.

To plead loss causation adequately, a plaintiff must first identify a corrective disclosure that reveals the falsity of the prior misrepresentation.  *Budde*, 2017 WL 6621540, at *5.  Under *Budde*, the plaintiff must then allege that the stock price declined after this disclosure, and the corrective disclosure must reveal the fraud or the falsity of the prior representation.  *Id.*  Although the disclosure need not be a direct admission that the prior misrepresentation was false, the disclosure must at least be "relevant to" the prior misrepresentation, i.e., the disclosure "must make the existence of the actionable fraud more probable than it would be without" the disclosure.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 256 n.20 (5th Cir. 2009); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) ("[A] disclosure need not precisely mirror an earlier misrepresentation.").

**III.   Analysis**

After review of the TAC, the Court finds that Plaintiff again fails to sufficiently plead a securities fraud claim against Defendants.  In her six page response, Plaintiff cites only one case not relevant to the pleading issues presented here.  After this many opportunities for Plaintiff to replead, Plaintiff must have pled her best case, so the Court declines to permit Plaintiff further leave to amend her pleadings and the TAC will, therefore, be dismissed with prejudice.  *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."); *Morrison v. City of Baton Rouge*,

761 F.2d 242, 246 (5th Cir. 1985) ("We can assume, therefore, that the specific allegations of the amended complaint constitute the plaintiffs' best case . . . .").

### a. Claim One: Omission of Cost Overruns on "Barracuda-Caratinga" Project

Plaintiff alleges that, in 2000, a Haliburton subsidiary entered into a fixed-price contract to develop the Barracuda and Caratinga oil fields, located off the coast of Brazil. [ECF No. 94 ¶ 53]. Plaintiff alleges that Halliburton experienced significant cost overruns on the project, and that Lesar and others at Halliburton knew of these overruns but did not properly report them. [*Id*. ¶¶54–64]. Plaintiff contends that the project had cost overruns of $43 million by December 31, 2001, and that Halliburton did not disclose the overruns until a July 22, 2002 press release announced a $119 million loss on the project. [*Id*. ¶¶ 58, 65–66].

Plaintiff has twice previously sought to plead a claim against Defendants arising from these facts. [ECF No. 13 ¶¶ 124–34; ECF No. 53 at ¶ 317]. Each time, the Court has dismissed Plaintiff's claim, finding that Plaintiff failed to allege adequately an actionable omission, scienter, or loss causation. [ECF No. 40 at 43–44; ECF No. 93 at 19–22]. The Court finds that Plaintiff's latest attempt suffers from these same deficiencies and that Plaintiff's claim must, therefore, be dismissed.

First, the TAC again fails to allege an actionable omission. As explained in the Court's prior Orders, it is not enough for Plaintiff to merely allege that Defendants omitted information from Halliburton's public filings. [ECF No. 40 at 43–44; ECF No. 93 at 11]. "[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). "Disclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Id*. (quoting 17 CFR §240.10b-

5(b)); *see also McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002) ("[A] duty to disclose arises only where both the statement made is material, and the omitted fact is material to the statement in that it alters the meaning of the statement."). Because of this, Plaintiff must "specify the statement that is misleading due to the omission in the same manner as a misrepresentation, i.e., the who, what, when, and where." *Odyssey Healthcare*, 424 F. Supp. 2d at 893.

The TAC fails to identify specifically any statement of Defendants rendered misleading by the alleged omission of the cost overruns. Further, there are no allegations in the TAC explaining how the omission rendered any statement misleading or alleging where the omission should have been disclosed. Plaintiff merely alleges that the overruns "were material" and "were omitted in the Halliburton Annual Report for 2001, the SEC Form 10[K] filed in March, 2002 and the Halliburton Quarterly Report for the 1st Quarter, 2002, [and] the SEC Form 10Q filed in May, 2002." [ECF No. 94 ¶ 64]. Such allegations fail to plead with adequate particularity an actionable omission.

Second, the TAC fails to allege adequately a strong inference of scienter with regard to the omission of the cost overruns. Plaintiff must "state with particularity facts giving rise to a strong inference" that each defendant acted with "intent to deceive, manipulate, or defraud or [with] severe recklessness." *Shaw Grp., Inc.*, 537 F.3d at 541. Instead, the TAC offers only conclusory statements alleging that Halliburton or Lesar "knowingly" failed to disclose the cost overruns and estimates of future losses, "knew" that the losses could not be recouped, "knew" that the losses would continue, and "knew, should have known, or recklessly disregarded" the overruns. [ECF No. 94 ¶¶ 50, 56, 68, 70, 72]. These conclusory allegations are insufficient to plead scienter. *See Shaw Grp.*, 537 F.3d at 538–39 (holding that "general allegations and

conclusory statements, such as stating [that a defendant] knew . . . adverse material" cannot support a strong inference of scienter). Plaintiff's omission claim regarding the Barracuda-Caratinga project is not adequately pled for this additional reason.

Third, the TAC also fails to allege loss causation adequately. To plead loss causation, Plaintiff must identify a corrective disclosure which reveals the prior fraud and is accompanied by a corresponding decline in the stock price. *Budde*, 2017 WL 6621540, at \*5. The TAC suggests that information regarding the cost overruns was disclosed on May 28, 2002, in a Halliburton press release announcing "that the SEC had commenced an investigation on [the] cost overruns." [ECF No. 94 ¶ 60]. The TAC further alleges that the omission was "partially disclosed" on July 22, 2002, when Halliburton issued a press release announcing that it would record a $119 million loss on the project. [*Id.* ¶ 65]. Defendants argue that these disclosures are insufficient, in and of themselves, to "reveal the fraud or falsity" because the SEC investigation was unrelated to the cost overruns and because the $119 million loss was a loss sustained in the period in which it was reported and, thus, not a prior loss omitted by Defendants. [ECF No. 96 at 12–13].

Even assuming that Plaintiff adequately pled a corrective disclosure, however, the TAC fails to plead sufficiently that there was a corresponding decline in share price, as necessary to support loss causation. With regard to a share price decline, the TAC alleges only that "Halliburton's share price, from the announcement of the SEC's investigation [May 28, 2002] to the end of the class period [July 22, 2002], dropped from $19.10 to $9.05." [ECF No. 94 ¶ 67]. This allegation does not sufficiently allege a share price decline resulting from the alleged disclosures. *See Erica P. John Fund*, 309 F.R.D. 251, 268–69 (N.D. Tex. 2015) (finding, at class certification stage, that a share price decline more than one day after the alleged corrective

8

disclosure "is inappropriate to measure price impact in an efficient market").  Further, Plaintiff fails to plead any facts which relate this decline in share price to either of the alleged corrective disclosures.  Thus, the TAC does not adequately plead loss causation.

Because the TAC does not adequately allege an actionable omission, scienter, or loss causation with regard to the alleged omission of cost overruns on the Barracuda-Caratinga project, this claim must be dismissed.

### b. Claim Two: Omissions of Asbestos Liabilities

Next, Plaintiff alleges that Defendants omitted disclosure of information regarding asbestos liabilities.  [ECF No. 94 ¶¶ 75–139].  Plaintiff alleges that several statements made by Defendants failed to disclose (1) that Dresser, a Halliburton subsidiary, was bankrupt, (2) the size of, and cost to settle, future asbestos claims, and (3) information about insurance coverage for asbestos claims.  [*Id*.].  Plaintiff has previously attempted to state a claim against Defendants based on these facts, and the Court has dismissed each of these prior attempts.  [ECF No. 40 at 40–42; ECF No. 93 at 12–19].  The Court finds that the TAC again fails to state a claim regarding the asbestos liabilities.

#### i. No Actionable Omission: Dresser's Bankruptcy

First, the TAC still fails to allege an actionable omission.  Plaintiff's first omission allegation is that Defendants failed to disclose that Dresser "was in a bankrupt state" and that "Halliburton was changing direction to pursue the bankruptcy option" for Dresser.  [ECF No. 94 ¶¶ 108, 114].  The TAC, however, fails to plead facts establishing that Dresser was, in fact, bankrupt or that Halliburton was preparing Dresser for bankruptcy.  Instead, the TAC merely offers the vague assertions that Halliburton "retained a large law firm [to] prepar[e] a bankruptcy

9

strategy" and hired an asbestos exposure expert to help "negotiate[e] and establish[] a Trust Fund for the bankruptcy." [*Id*. ¶¶ 98–99].

The TAC does not allege any duty requiring Defendants to disclose the allegedly omitted information, and it does not identify any public statement rendered materially misleading by its omission. Instead, Plaintiff generally alludes to two public statements made by Lesar in December 2001, where he stated that Halliburton had "plenty of liquidity" and that "liquidity was strong." [*Id*. ¶¶106–07]. Plaintiff further alludes to a January 4, 2002 press release, which states that "[t]here is no basis to the spurious rumor that the company [i.e. Halliburton] has filed for bankruptcy." [*Id*. ¶ 113]. The Court has already held that "[s]tatements that Halliburton had 'plenty of' or 'considerable' liquidity are too general and vague" to be actionable. [ECF No. 93 at 6]. And, Plaintiff again "fails to explain how the press release, which discusses rumors regarding Halliburton's supposed bankruptcy, is even relevant" to Plaintiff's claim regarding a possible bankruptcy for Dresser. [*Id*. at 18].

For the above reasons, the TAC alleges no actionable omission regarding Dresser's alleged "bankrupt state."

### ii.  No Actionable Omission: Asbestos Trust

Next, Plaintiff alleges that Defendants failed to disclose the size of an asbestos trust to be established in Dresser's potential bankruptcy and that "it was Halliburton that was going to have to put up the money for the trust . . . because [Dresser] had no assets." [*Id*. ¶ 127; *see also id*. ¶¶ 119, 121, 122, 126]. The TAC, again, does not allege a duty to disclose the allegedly omitted information or specifically identify any statement rendered materially misleading by the omission. Instead, the TAC vaguely references two statements in Halliburton's Form 10Q published on May 12, 2002, and generally refers to Halliburton's 2001 Form 10K, only by

name.³ [*Id.* ¶¶ 119, 138]. However, the statements contained in the Form 10Q are general statements qualified by modifiers like "may" and "believe."⁴ Such statements are exactly the type of vague and optimistic statements that are not actionable as a matter of law, *see Basic v. Levinson*, 485 U.S. 224, 231 (1988), and Plaintiff makes no allegation that Defendants did not hold the beliefs professed. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S.Ct. 1318, 1327, 1332 (2015). For all of these reasons, the TAC fails to allege an actionable omission regarding the asbestos fund.

### iii. No Actionable Omission: Insurance Coverage

Finally, Plaintiff alleges that Defendants omitted to disclose, in a February 14, 2002 press release, that its asbestos insurance policies "were in litigation and that those contract rights were a[] significant asset for a [t]rust." [ECF No. 94 ¶¶ 116–17]. Plaintiff does not allege that Defendants had any duty to disclose the allegedly omitted information, and the TAC does not identify any statement in the press release rendered materially misleading by the alleged omission. Thus, the TAC also fails to allege sufficiently an actionable omission regarding the asbestos insurance coverage.

### iv. Scienter

Plaintiff's omissions allegations regarding the asbestos liabilities also fail because the TAC does not sufficiently plead scienter. Plaintiff's allegations of scienter regarding these

---

³ Plaintiff also references statements regarding the asbestos trust made outside of the class period. [ECF No. 94 ¶¶ 130–136]. These statements are not actionable. *Magruder*, 2009 WL 854656, at *1 ("[O]nly statements or events within the class period are *actionable*.") (emphasis in original).

⁴ The two statements that Plaintiff identifies in the Form 10Q are (1) "Dresser Industries, Inc. may make a contribution to a trust in order to achieve a confirmed plan," and (2) "we believe that the open asbestos claims currently pending against us will be resolved without a material adverse effect on our financial position or the results of our operations." [ECF No. 94 ¶ 119].

11

omissions are that "Halliburton and Lesar knew" that Dresser was bankrupt, that bankruptcy would require a large trust, and that Dresser had sustained worse asbestos verdicts in the past than Halliburton. [*Id.* ¶¶ 82, 92, 100–02, 119, 122]. The Court has already warned Plaintiff that statements merely attributing knowledge to "Halliburton" or "Defendants" represents impermissible group pleading. [ECF No. 93 at 8 ("[U]nattributed statement[s] [are] impermissible group pleading. The pleading must include additional allegations that tie a specific individual to the statements.")]. Further, the unsupported allegations in the TAC regarding Defendants' knowledge do not "state with particularity facts giving rise to a strong inference" that each defendant acted with "intent to deceive, manipulate, or defraud or [with] severe recklessness." *Shaw Grp., Inc.*, 537 F.3d at 541. Thus, the TAC fails to allege sufficiently that Defendants acted with scienter with regard to the alleged asbestos omissions and this claim also fails for that reason.

### v. Loss Causation

Finally, the asbestos omissions claim also fails to allege loss causation adequately. First, the TAC does not specifically identify any corrective disclosure that revealed a previously concealed truth as to the asbestos omissions claim. The only alleged corrective disclosures contained in the TAC which relate to these alleged omissions are the June 4, 2002 and July 22, 2002 press releases. [ECF No. 94 ¶ 37]. The June 4, 2002 press release reported that a bankruptcy stay would remain in place for a former Dresser subsidiary. [*Id.*]. The TAC, however, again fails to "allege how announcing further extensions to the stay of asbestos-related claims arising from the bankruptcy 'reveals a previously concealed truth.'" [ECF No. 93 at 19 (citing *Magruder*, 2009 WL 854656, at *11)]. Further, the TAC fails to describe, with any detail, a resulting decline in the price of Halliburton shares.

The July 22, 2002 press release announced that Halliburton's outside expert had "essentially completed" a study on potential future asbestos liabilities and determined that the costs of these claims would be "substantial and impact both continuing and discontinued operations." [ECF No. 94 ¶ 128]. The TAC, however, does not explain what prior statements this disclosure corrects or how it reveals a previously concealed truth. This is, as the Court has already noted, necessary "given that different types of negative news were released th[is] same day, and the market's reaction could have been to [this] announcement . . . or to other market forces." [ECF No. 40 at 30–31]. The TAC fails to plead loss causation.

For the reasons above, the TAC fails to plead an omissions claim regarding the asbestos liabilities.

   **c. Claim Three: Violation of SEC Order**

Next, Plaintiff seeks to advance a claim for "violation of the SEC's Order of June 27, 2002." [ECF No. 94 ¶¶ 140–46]. This claim alleges that "the SEC issued an order to approximately 900 companies that the CEO and CFO . . . would have to verify the accuracy of th[e company's] 2001 10K and [2002] 1st and 2nd Quarter 10Q[s]." [*Id.* ¶ 140]. Plaintiff alleges that Lesar "knowingly violated" this SEC Order by certifying the relevant Halliburton filings which omitted information regarding the Barracuda-Caratinga cost overruns and the asbestos liabilities. [*Id.* ¶¶ 142–45].

This claim is not properly pled for several reasons. First, the Court has already found that Plaintiff has failed to state an actionable omission claim regarding either the cost overruns on the Barracuda-Caratinga project or the asbestos liabilities. Next, the alleged fraudulent statement—Lesar's certification in response to the SEC's order—occurred after the class period and is therefore not actionable. [*See id.* at PX 3 (showing that Lesar signed the certification on August

13

12, 2002)]. Further, the TAC pleads no nonconclusory allegations of scienter or loss causation with regard to this claim. And, finally, the TAC provides no explanation of why Plaintiff is entitled to sue to enforce an SEC Order.

For these reasons, Plaintiff's claim regarding the SEC's Order of June 27, 2002 also fails to plead an actionable claim and must be dismissed.

### d. Claim Four: Improper Payments to Foreign Official

Finally, Plaintiff attempts to plead a claim regarding disclosure of improper payments to a Nigerian tax official. [ECF No. 94 ¶¶ 147–57]. The Court had already dismissed this claim with prejudice, as barred by the statute of repose. [ECF No. 93 at 8–9]. Plaintiff attempts to replead this claim and argues that it is not barred by alleging that "the SEC found books and record violations in the class period," presumably related to the bribery incident. [ECF No. 94 ¶ 153]. Further, the claim does not allege that any statement was misleading, does not contain even a conclusory allegation of scienter, and alleges loss causation merely by arguing that an SEC disgorgement penalty—not a stock drop—"demonstrates damage to the class." [*Id*. ¶ 156]. The Court has already found that this claim is barred, but, even if it were not, it is not properly pled.

### e. Section 20(a)

Under Section 20(a), "[e]very person who, directly or indirectly, controls any" corporation that is found "liable under any provision of this chapter . . . shall also be liable jointly and severally with" the corporation. 15 U.S.C. § 78t(a). Plaintiff must therefore establish a primary violation under Section 10(b) before liability arises under Section 20(a) against an individual defendant. *See ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 n.57

(5th Cir. 2002). Because Plaintiff does not state a claim for violations of Section 10(b), her Section 20(a) claim must also be dismissed.

## IV.  Conclusion

For the reasons stated above, Defendants' Motion is **GRANTED**. The Court finds that each of Plaintiff's claims against Defendants fail to state a claim and must be dismissed. The Court has twice previously dismissed Plaintiff's claims against Defendants with leave to replead. [ECF No. 40, 93]. After dismissing Plaintiff's claims this third time, the Court concludes that Plaintiff has had sufficient opportunity to plead an actionable claim against Defendants. The Court, therefore, **DENIES** Plaintiff's request to file another amended complaint. **IT IS THEREFORE ORDERED** that Plaintiff's TAC is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

March 12, 2019.

_____
BARBARA M. G. LYNN
CHIEF JUDGE